## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GERMAN CHAJCHIC,** | : | **CIVIL NO. 1:17-CV-457** |
| | : | |
| **Petitioner,** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **JOHN ROWLEY, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

## REPORT AND RECOMMENDATION

### I.    Factual Background

On March 15, 2017, German Chajchic filed a petition for writ of habeas corpus which alleged that the petitioner, an alien residing in the United States, had been placed in removal proceedings, and has been detained pre-removal pursuant to a mandatory detention statute for more than one year. (Doc. 1.) With the passage of more than one year in immigration detention, the petitioner came before this court on this petition for writ of habeas corpus, seeking "a bond hearing before an Immigration Judge." (Doc. 1, p. 7.) We directed a response to this petition, which was filed on April 6, 2017, and in that response the Respondents acknowledged the following essential facts:

German Chajchic, is a native and citizen of the Guatemala, who was admitted to the United States on July 15, 1993 as a B2, Temporary Visitor for Pleasure. Chajchic was later granted lawful permanent resident status on January 10, 2001. On November

16, 2010, Chajchic was charged federally with drug trafficking. Chajchic was subsequently convicted and, on May 17, 2013, Chajchic was sentenced in the United States District Court for the Eastern District New York to twenty-four months imprisonment for conspiracy to distribute marijuana.

On February 26, 2016, upon release from criminal custody, immigration officials took Chajchic into immigration detention and issued a notice to appear charging Chajchic as removable pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (INA) based on Chajchic's conviction for an aggravated felony drug trafficking offense. Chajchic conceded removability but applied for relief in the form of Withholding of Removal and Deferral of Removal under the Convention against Torture. Under the Immigration and Naturalization Act, Chajchic's detention was mandatory, and he has received no individualized bail consideration.

On July 5, 2016, an immigration judge ordered Chajchic removed and denied all forms of relief under the Convention Against Torture. Chajchic appealed this July 5, 2016 decision to the Board of Immigration Appeals (BIA) which dismissed the appeal. Chajchic then filed a petition for review with the United States Court of Appeals for the Third Circuit, and moved for a stay of removal, which the Third Circuit granted. As a matter of law, this appellate court action had the effect of converting Chajchic's custodial status to section 1226 (c) pre-final order detention. See Leslie v.

Att'y Gen., 678 F.3d 265, 270 (3d Cir. 2012). Consequently it appears that Chajchic has been held in pre-removal detention for more than one year without any individualized bond consideration. Thus, it is undisputed that Chajchic's current period of mandatory detention without bond consideration has reached what the court of appeals has previously described as a presumptively unreasonable duration, thus triggering a right to a bond hearing. Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469 (3d Cir. 2015) On these facts, the Respondents agree that if the court enters an order directing this matter to an immigration judge for a bond hearing, Respondents will coordinate with the Immigration Court to schedule a bond hearing as expeditiously as possible. See 8 C.F.R. § 1003.19(c) (the Immigration Court has jurisdiction to hold such bond hearings and in light of its expertise in immigration law is the appropriate forum for such hearings). (Doc. 4, p. 2.)

In light of these developments it is recommended that the district court grant the petition and order an individualized bond hearing for Chajchic to be conducted before an Immigration Judge, "at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute," Diop v. ICE/Homeland Sec., 656 F.3d 221, 233 (3d Cir. 2011), something the government appears to concede should take place in this case.

## II.  **Discussion**

One of the statutory and constitutional duties conferred upon this court is the

responsibility to address federal habeas corpus petitions filed by immigration detainees who challenge their immigration detention as unconstitutionally excessive. Over the past several years, case law in this field has evolved significantly, providing far greater clarity to the courts regarding the benchmarks they should apply when discharging this important responsibility, a duty rooted in our constitution.

In Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469 (3d Cir. 2015), the court of appeals has provided us with an analytical paradigm to apply when assessing these immigration excessive detention claims in a pre-removal context. As the court explained in outlining the legal terrain in this field:

Before 1996, significant numbers of aliens convicted of serious crimes were taking advantage of their release on bond as an opportunity to flee, avoid removal, and commit more crimes. Demore v. Kim, 538 U.S. 510, 518–19, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003). Congress fixed this problem by enacting section 1226(c), expanding the range of serious crimes for which the Government was required to detain convicted aliens. Notably, section 1226(c) does not give the Attorney General any authority to release these aliens on bond. Id. at 521, 123 S.Ct. 1708. The Supreme Court left no doubt that the Government's authority under section 1226(c) to detain aliens without an opportunity for bond complies with the Constitution. Id. at 531, 123 S.Ct. 1708. However, as we discuss below, we read Demore as also recognizing that there are limits to this power. Diop, 656 F.3d 221; Leslie v. Attorney Gen. of the United States, 678 F.3d 265 (3d Cir.2012). When the Supreme Court upheld the constitutionality of the law in Demore, it also gave us insight into how, from a due process perspective, section 1226(c)'s allowance of detention without bail worked. The Court reiterated the fundamental idea that aliens are protected by constitutional due process. Demore, 538 U.S. at 523, 123 S.Ct. 1708 (citing Reno v. Flores, 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993)). But, it put the alien's issue in perspective, saying " '[i]n the exercise of its broad power over naturalization and immigration,

4

Congress regularly makes rules that would be unacceptable if applied to citizens.' " Id. at 521, 123 S.Ct. 1708 (quoting Mathews v. Diaz, 426 U.S. 67, 79–80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976)). The Court went on to say that applying " 'reasonable presumptions and generic rules' " to groups of aliens—for purposes of due process—can be consistent with the idea that aliens can be treated differently. Id. at 526, 123 S.Ct. 1708 (quoting Flores, 507 U.S. at 313, 113 S.Ct. 1439); see also Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952). The Court, in essence, concluded that Congress lawfully required the Attorney General to make presumptions of flight and dangerousness about the alien solely because he belonged to the group of aliens convicted of the types of crimes defined in section 1226(c).

Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 472 73 (3d Cir. 2015).

Thus, the court in Chavez-Alvarez recognized that Demore held that mandatory detention of certain criminal aliens pending removal proceedings does not, by itself, offend due process. However, the Demore Court based this ruling upon its understanding of the short, fixed and finite term of any detention prior to removal which typically should not exceed 6 months. Yet, while Demore addressed the due process issues that arise from the fact that, for certain criminal aliens, detention pending removal is mandatory, it is also clear that courts still have an independent responsibility to assess whether the duration of any mandatory detention is so extended and unreasonable as to violate due process.

Further, the court in Chavez-Alvarez provided us with clear guidance in assessing the reasonableness of the duration of any mandatory immigration detention. This determination entails a balancing test, and while noting that "[b]y its very nature,

the use of a balancing framework makes any determination on reasonableness highly fact-specific," <u>Chavez-Alvarez v. Warden York Cnty. Prison</u>, 783 F.3d 469, 474 (3d Cir. 2015), the court enjoins us that there are several guideposts which we must consider. First, in a case where an alien is prosecuting a good faith challenge to his or her removal from the United States, the appellate court held that, "beginning sometime after the six-month time frame considered by <u>Demore</u>, and certainly by the time [the alien] had been detained for one year, the burdens to [the petitioner's] liberties outweigh[] any justification for using presumptions to detain him without bond to further the goals of the statute. We conclude that the underlying goals of the statute would not have been, and will not now be undermined by requiring the Government to produce individualized evidence that [the petitioner's] continued detention was or is necessary." <u>Chavez-Alvarez v. Warden York Cnty. Prison</u>, 783 F.3d 469, 478 (3d Cir. 2015).

In prescribing this one-year time frame beyond which the presumption of detention is sufficiently eroded that an individualized bail consideration is necessary, the appellate court also defined what showing the government must make in order to justify the continued detention of the petitioner. According to the court, the immigration statute " 'implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends

6

removal proceedings and that his release will not pose a danger to the community.' "
Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 475 (3d Cir. 2015).
Further, once "detention becomes unreasonable, the Due Process Clause demands a
hearing, *at which the Government bears the burden of proving that continued detention
is necessary to fulfill the purposes of the detention statute*." Diop v. ICE/Homeland
Sec., 656 F.3d 221, 233 (3d Cir. 2011)(emphasis added.)

Applying Chavez-Alvarez to the facts of this case, we conclude–and the
government does not dispute–that Chajchic has made a *prima facie* showing justifying
an individualized bail hearing. Thus, all parties agree that this legal challenge to his
removal is presented in good faith, the initial benchmark cited by the court in Chavez-
Alvarez. It is also undisputed that the current duration of Chajchic's pre-removal
detention now exceeds one year, a period of time which Chavez-Alvarez found to be
presumptively excessive, thus triggering a right to an individualized bail hearing.

Finding that an individualized bail hearing is appropriate in this case, it is
recommended that this Court order that an Immigration Judge in the first instance
conduct this individualized bond hearing. Indeed, in Chavez-Alvarez, the appellate
court suggested that, in many instances, this initial bail determination can, and should,
be made by the Immigration Judge, applying the constitutional benchmarks outlined
by the courts. Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 478 n.12
(3d Cir. 2015). This guidance, in turn, is consistent with other case law in this field,

where federal courts have frequently referred these bail questions to Immigration Judges in the first instance. See, e.g., Casas-Castrillon v. Dep't of Homeland Security, 535 F.3d 942 (9th Cir. 2008); Reid v. Donelan, 991 F. Supp. 2d 275 (D. Mass. 2014); Chen v. Aitken, 917 F. Supp. 2d 1013 (N.D. Cal. 2013); Sengkeo v. Horgan, 670 F. Supp. 2d 116 (D. Mass. 2009); Bourguignon v. MacDonald, 667 F. Supp. 2d 175 (D. Mass. 2009); Wilks v. U.S. Dep't of Homeland Security, No. 07-2171, 2008 WL 4820654 (M.D. Pa. Nov. 3, 2008). Moreover, this course of action is entirely consistent with settled case law directing such hearings before immigration judges for petitioners like Chajchic whose extended pre-removal detention falls within the ambit of the ruling in Chavez-Alvarez. See e.g., Vale v. Sabol, No. 1:15-CV-2249, 2015 WL 8602751, at *1 (M.D. Pa. Dec. 14, 2015);  Singh v. Sabol, No. 1:14-CV-1927, 2015 WL 3519075, at *1 (M.D. Pa. June 4, 2015), appeal dismissed (Sept. 9, 2015).

### III.  **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the district court GRANT the petition and order an individualized bond hearing for Chajchic within 21 days in accordance with the dictates of the United States Court of Appeals in Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 478 (3d Cir. 2015).

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any  party  may  object  to  a  magistrate  judge's  proposed  findings,

recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 7th day of April, 2017.

_S/Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge