**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GERMAN CHAJCHIC,** | : | **CIVIL NO. 1:17-CV-457** |
| | : | |
| **Petitioner,** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **JOHN ROWLEY, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

## REPORT AND RECOMMENDATION

### I. Factual Background

This federal habeas corpus petition now comes before us for consideration of a motion filed by the petitioner, German Chajchic, which seeks to re-open Chajchic's case and set aside an order entered by an Immigration Judge which denied bond to the petitioner. (Doc. 8.) In considering this motion we do not write upon a blank slate. Quite the contrary, Chajchic's criminal past, and the prior immigration and habeas corpus proceedings in Chajchic's case, now define for us the course we should follow in this matter.

These prior proceedings reveal that German Chajchic is a native and citizen of the Guatemala, who was admitted to the United States on July 15, 1993 as a B2, Temporary Visitor for Pleasure. Chajchic was later granted lawful permanent resident status on January 10, 2001.

According to records of Chajchic's immigration proceedings, in January of 2011, Chajchic was also affiliated with an international criminal gang, the Neta gang. Chajchic's affiliation with this criminal gang took a fatal turn on January 1, 2001 when two fellow Neta gang members murdered a member of a rival gang, MS 13. Chajchic was operating the car used by these killers when they committed this murder and at a minimum had direct knowledge of this slaying since he later testified as a witness to this killing.

Despite his knowledge of his association with this murderous gang, Chajchic remained actively engaged in violent Neta gang-related activity for at least two years following this homicide. Thus, by his own admission, Chajchic was arrested in April of 2003, in the company of a fellow Neta gang member who was armed and had participated in this 2001 gang-related killing. (Doc. 8-2.) In October of 2003 Chajchic was informed that he was facing significant federal firearms charges, and began cooperating with federal authorities. This cooperation resulted in Chajchic testifying against former gang affiliates, and led to a reduced sentence for Chajchic on his own criminal charges.

Upon his release from custody, Chajchic promptly returned to organized gang-related criminal activity, indulging in marijuana trafficking as part of a larger drug trafficking conspiracy which Chajchic has stated trafficked in approximately $169,000 in marijuana. (*Id*.) According to Chajchic this marijuana trafficking

involved Mafia organized crime figures. On November 16, 2010, Chajchic was charged federally with this drug trafficking. Chajchic was subsequently convicted and, on May 17, 2013, Chajchic was sentenced in the United States District Court for the Eastern District New York to twenty-four months imprisonment for conspiracy to distribute marijuana.

On February 26, 2016, upon release from this latest criminal custody, immigration officials took Chajchic into immigration detention and issued a notice to appear charging Chajchic as removable pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (INA) based on Chajchic's conviction for an aggravated felony drug trafficking offense. Chajchic conceded removability but applied for relief in the form of Withholding of Removal and Deferral of Removal under the Convention against Torture. Under the Immigration and Naturalization Act, Chajchic's initial detention was mandatory, and therefore he received no individualized bail consideration at the outset of these removal proceedings.

On July 5, 2016, an immigration judge ordered Chajchic removed and denied all forms of relief under the Convention Against Torture. Chajchic appealed this July 5, 2016 decision to the Board of Immigration Appeals (BIA) which dismissed the appeal. Chajchic then filed a petition for review with the United States Court of Appeals for the Third Circuit, and moved for a stay of removal, which the Third Circuit granted. As a matter of law, this appellate court action had

the effect of converting Chajchic's custodial status to section 1226 (c) pre-final order detention. See Leslie v. Att'y Gen., 678 F.3d 265, 270 (3d Cir. 2012). Consequently, by March of 2017 Chajchic was held in pre-removal detention for more than one year without any individualized bond consideration.

On March 15, 2017, Chajchic filed a petition for writ of habeas corpus which alleged that the petitioner, an alien residing in the United States, had been placed in removal proceedings, and has been detained pre-removal pursuant to a mandatory detention statute for more than one year. (Doc. 1.) With the passage of more than one year in immigration detention, the petitioner came before this court on this petition for writ of habeas corpus, seeking "a bond hearing before an Immigration Judge." (Doc. 1, p. 7.) In response to this petition the Respondents acknowledged that Chajchic's current period of mandatory detention without bond consideration had reached what the court of appeals had previously described as a presumptively unreasonable duration, thus triggering a right to an individualized bond hearing. *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469 (3d Cir. 2015) The Respondents further agreed to coordinate with the Immigration Court to schedule an expedited bond hearing as expeditiously as possible. *See* 8 C.F.R. § 1003.19(c) (the Immigration Court has jurisdiction to hold such bond hearings and in light of its expertise in immigration law is the appropriate forum for such hearings). (Doc. 4, p. 2.)

In light of these developments we recommended that the District Court grant the petition and order an individualized bond hearing for Chajchic to be conducted before an Immigration Judge, "at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute," *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 233 (3d Cir. 2011), something the government conceded should take place in this case.(Doc. 5.) The District Court adopted this recommendation, (Doc. 6), and a bond hearing was conducted before an Immigration Judge on June 6, 2017. (Doc. 13.) At that hearing Chajchic and immigration officials presented evidence relating to the petitioner's risk of flight and danger to the community. Following a consideration of this evidence, the Immigration Judge entered an order denying Chajchic's application for bond. In this order the Immigration Judge correctly articulated the legal standards governing release of aliens pending removal proceedings, noting that the court must consider two primary factors: (1) risk of flight and (2) danger to the community. (*Id*.) The Immigration Judge also aptly observed that under prevailing legal standards the government bore the burden of proof and persuasion on these considerations and must carry that burden of proof by clear and convincing evidence.

The Immigration Judge then found that the government had met this burden of proof with respect to the question of whether Chajchic presented a danger to the

community. On this score, the Immigration Judge cited Chajchic's on-going involvement in criminal gang activity; his knowledge of a gang related slaying; his continued affiliation with the Neta gang following this murder; his later involvement in organized crime, Mafia-related drug trafficking; and Chajchic's commission of serious criminal conduct, large scale drug trafficking, following his release from custody on his prior gang related charges, as factors which led to Immigration Judge to conclude that Chajchic presented an on-going danger to others.

It is against the background of this criminal recidivism, gang related violence, homicide, drug trafficking, and affiliation with organized crime, that Chajchic now comes before this court on a motion to re-open this case. In this motion Chajchic urges us to exercise our habeas corpus jurisdiction to set aside the discretionary bond denial decision of the Immigration Judge. (Doc. 8.) This motion to re-open is fully briefed by the parties. (Docs. 9-14), and is, therefore, ripe for resolution.

For the reasons set forth below, it is recommended that this motion to re-open be denied.

## II. <u>Discussion</u>

### A. Chajchic is Not Entitled to Further Habeas Corpus Relief

In this case, Chajchic invites the court to set aside a bond denial decision entered by an Immigration Judge. That decision concluded, based upon Chajchic's personal circumstances—which included extensive gang-related activity, presence as a witness to at least one gang related homicide, drug trafficking following his conviction for gang-related activity, as well as affiliation with organized crime, Mafia drug traffickers—that Chajchic presented a danger to others if released.

With respect to this motion to re-open, the parties present starkly contrasting narratives relating to Chajchic's background and the Immigration Judge's bond decision, but pay less attention to the legal standards which should govern our review of this decision. We believe, however, that a precise articulation of the standards of review which we should apply here is essential to informed decision-making. On this score, we observe that it is clear beyond peradventure that this court does not sit as a plenary tribunal conducting *de novo* reviews of Immigration Judge bond decisions. Quite the contrary, our role in this field, while constitutionally vital, is narrow. Several factors combine to carefully define our role in this arena.

At the outset, the deference which we should give the Immigration Judge decisions in this field is underscored by the fact that as a prudential matter courts

frequently require habeas petitioners like Chajchic to fully exhaust their administrative remedies prior to filing for habeas corpus relief. This rule favoring exhaustion of administrative remedies as a predicate to consideration of habeas corpus petitions acknowledges the deference which should be afforded agency decisions and fosters important institutional goals, including: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757,761-62 (3d Cir. 1996) (explaining the rationale for exhaustion for habeas petitions in the context of prison disciplinary proceedings). These very important purposes are frequently furthered by requiring aliens who receive a bond hearing before the immigration judge to exhaust their administrative remedies and raise any issues with the BIA prior to seeking federal habeas corpus relief. Accordingly, courts have applied these exhaustion requirements to aliens who challenge their detention with immigration authorities. *See* *Okonkwo v. LN.S.*,69 F. App'x 57,59 (3d Cir. 2003) (affirming denial of unexhausted immigration habeas petition). Indeed, in *Chavez-Alvarez*, the appellate court underscored the deference which should be given to the agency’s determinations in this field when it stated that this initial bail determination should be made by the Immigration Judge, applying the

constitutional benchmarks outlined by the courts. *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 478 n.12 (3d Cir. 2015).

Thus, as a threshold matter this court could decline to further review this bond determination at this time and insist instead that Chajchic fully exhaust his administrative appeals through an appeal of this bond decision to the BIA. While this course is available to the court, and may further important institutional goals, we also acknowledge that the exhaustion requirement imposed by courts relating to habeas corpus petitions filed by immigration detainees is a prudential benchmark which is not compelled by statute *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011). Therefore, compliance with full exhaustion may be waived by the courts in appropriate cases. Accordingly, some merits consideration of this petition is also appropriate.

When we consider this petition on its merits, we believe that the same prudential considerations which often call for full exhaustion of administrative remedies also dictate that we employ a deferential standard of review when assessing the merits of Chajchic's petition for extraordinary habeas corpus relief. Stripped to its essence, in this case we are being called upon to consider a discretionary denial of bond by an Immigration Judge, a decision which followed the partial granting of Chajchic's initial habeas corpus petition, and a direction that Chajchic receive an individualized bond hearing.

In this setting we believe that the scope of federal habeas corpus review of that discretionary bond denial decision is narrowly circumscribed.[1] Where we are asked to review a discretionary bond determination by an Immigration Judge following an order remanding a case for individualized bond consideration, our review is limited to three essential considerations.

First, we must assure ourselves that the decision of the Immigration Judge paid full fidelity to the law of the case, as prescribed by the prior rulings of the court. The law of the case doctrine has plain relevance to these habeas corpus proceedings, where the Immigration Judge has received specific guidance from the District Court regarding the conduct and content of an individualized bond hearing. *See Leslie v. Holder*, 865 F. Supp. 2d 627, 634 (M.D. Pa. 2012)(applying law of the case doctrine in habeas bond matter). In this case, having reviewed the

[1] We note that the Respondents suggest that this issue is entirely moot because Chajchic received a hearing, albeit one which did not result in his release. On this score, Respondents suggest that all Chajchic was entitled to was a hearing, and having received that hearing he cannot be heard to further complain about the outcome of that proceeding. We disagree with this categorical view. Taken to its extreme, this position would mean that the simple expedient of providing a hearing, even a plainly inadequate hearing, would fully satisfy due process and render moot any habeas corpus challenge to a bond denial decision. We do not believe that our constitutional duty would be discharged through such an exercise in formalism. Yet while we believe that our role in this process does not completely draw to a close once some sort of hearing is provided to a petitioner-detainee, as discussed above we acknowledge that the scope of any further review of a bond denial is both deferential and narrowly tailored. However, in our view federal courts still have an important, but specifically defined, role in ensuring that bond hearings satisfy the basic requirements of due process in this setting.

Immigration Judge's decision, we are satisfied that it was fully in accord with the law of the case. That decision reflected a careful and individualized assessment of the risk of flight and danger to the community presented by Chajchic's potential release. A review of the Immigration Judge's decision reveals that the Immigration Judge made this dangerousness assessment on a particularized and individual basis, citing Chajchic's gang affiliations; association with violent criminal recidivists; involvement in drug trafficking; commission of crimes following his release from his first gang related criminal sentence; and association with organized crime figures as grounds for concluding that he presented a danger to others. While Chajchic may be dissatisfied with this individualized assessment, it cannot be said that the Immigration Judge did not follow the law of the case, as prescribed by this court and conduct an individualized bond hearing. Therefore, Chajchic would not be entitled to habeas corpus relief on these grounds.

A second component to due process in this setting, and a second element of any habeas corpus review, entails ensuring that there has been no plain legal error by the Immigration Judge in identifying and applying the controlling legal precepts. Here we discern no such error in the Immigration Judge's bond decision in Chajchic's case. That decision correctly articulated the legal standards governing release of aliens pending removal proceedings, noting that the court must consider two primary factors: (1) risk of flight and (2) danger to the

community. The Immigration Judge also aptly observed that under prevailing legal standards the government bore the burden of proof and persuasion on these considerations and must carry that burden of proof by clear and convincing evidence. These legal benchmarks are entirely consistent with decisional law in this field. *See e.g.*, *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 478 n.12 (3d Cir. 2015); *In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Since the Immigration Judge has properly articulated the legal standards which govern immigration bond decisions in this setting, allocating the burden of proof and persuasion to the government on these issues by clear and convincing evidence, there was no legal error in this case which would warrant habeas corpus relief.

Once we have satisfied ourselves that the Immigration Judge's ruling is consistent with the law of the case, and does not reflect a fundamental legal error which would justify habeas corpus relief, the final possible factor which warrants consideration is whether the exercise of discretion in denying bond was so arbitrary that it would offend fundamental tenets of due process. Cases addressing this issue in the analogous context of §2241 habeas corpus petitions by prisoners challenging bond decisions in criminal cases set precise and exacting standards for due process claims in this particular setting. When reviewing a discretionary denial of bond courts have held that the degree of arbitrariness necessary to state a constitutional claim is striking and the petitioner "bears the burden of showing that

there is no rational basis in the record for the denial of bail." *Martin v. Diguglielmo*, 644 F. Supp. 2d 612, 621 (W.D. Pa. 2008), quoting *Finetti v. Harris*, 609 F.2d 594, 601 (2d Cir. 1979). Therefore, in considering habeas corpus challenges to discretionary decisions denying bond, it has been held that:

> Thus, even though federal habeas corpus is an appropriate procedure for seeking relief from arbitrary and unconstitutional denial of bail, it is clear that federal district courts do not sit as appellate courts to review the use or abuse of discretion of [other] courts in the granting or denying of bail . . . .. Accordingly, it has been held that the burden is on petitioner to show that the record is devoid of a rational basis for the denial. *Sampson v. Brewer, supra; Finetti v. Harris, supra; United States ex rel. Smith v. Twomey*, 486 F.2d 736 (7th Cir. 1973), *cert. denied* 416 U.S. 994, 94 S.Ct. 2408, 40 L.Ed.2d 773 (1974); *Brown v. Wilmot*, 443 F.Supp. 118 (S.D.N.Y.1977), *aff'd*. 572 F.2d 404 (2nd Cir. 1978); *Diller v. Greco, supra*
>
> *Garton v. Marsteller*, 545 F. Supp. 994, 997–98 (D. Kan. 1982).

In sum, when examining a discretionary decision denying bond in a custodial setting under §2241: "[t]o sustain a federal claim, a petitioner must demonstrate the denial of bail was arbitrary or without any rational basis." *Colavita v. Pennsylvania*, No. CIV.A. 08-3557, 2009 WL 616649, at *4 (E.D. Pa. Mar. 6, 2009).

Applying these substantive standards to the instant case, we find that the Immigration Judge's discretionary decision to deny bond to Chajchic was entirely rational given Chajchic's own extensive criminal history, a history marked by violent gang affiliation, presence as a witness at an act of murderous violence,

recidivism following Chajchic's first gang-related conviction, involvement in large scale drug trafficking following an initial gang-related conviction and sentence, and admitted association with organized crime figures. These consideration of gang-related violence, recidivism, drug trafficking and organized crime affiliations, fully justified a determination that, if released, Chajchic's past would predict that he would present a danger to others in the future. Since this conclusion flows reasonably from Chajchic's own past misconduct, and on-going criminal activity, we are constrained to conclude that this is not a case where "the record is devoid of a rational basis for the denial." *Garton v. Marsteller*, 545 F. Supp. 994, 997–98 (D. Kan. 1982). Nor has Chajchic "demonstrate[d] the denial of bail was arbitrary or without any rational basis." *Colavita v. Pennsylvania*, No. CIV.A. 08-3557, 2009 WL 616649, at *4 (E.D. Pa. Mar. 6, 2009). Quite the contrary, the conclusions drawn by the Immigration Judge were entirely rational given Chajchic's demonstrated penchant for gang activities, his presence at acts of murderous violence, and his resort to organized criminal drug trafficking with Mafia figures following his release from custody.

In sum, Chajchic's continued detention is not a result of some constitutionally infirm procedure, as Chajchic suggests. Instead, Chajchic's detention is the predictable consequence of his own criminal choices. Thus, the chains that now bind Chajchic are the chains he forged through the decisions he

made and the crimes he committed and witnessed others commit. Since Chajchic has not shown the level of arbitrariness and irrationality necessary to establish that this discretionary denial of bond offended fundamental constitutional principles, this motion to re-open should be denied and the decision of the Immigration Judge denying bond at this time to Chajchic should be sustained.

## III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the district court DENY the petitioner's motion to re-open this case. (Doc. 8.).

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 25th day of July, 2017.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge